UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHELLE B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:24-CV-1339-JSD |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Michelle B. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 6.) For the reasons stated herein, the Court affirms the Commissioner's denial of Plaintiff's application.

---

[1] Frank Bisignano was confirmed as the new Commissioner of Social Security in May 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted, therefore, for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.     **BACKGROUND**

In January 2019, Plaintiff applied for DIB and SSI, alleging that she had been unable to work since December 31, 2015, due to carpal tunnel, bulging disc, spondylitis, pseudo tumor cerebri, occipital neuralgia, anxiety, depression, and neck and shoulder pain. (Tr. 177, 180, 192.) In August 2019, Plaintiff's application was denied. (Tr. 100-104.) On June 2, 2020, following a hearing requested by Plaintiff, an administrative law judge ("ALJ") issued an unfavorable decision. (Tr. 16-30, 106.) Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council (Tr. 173-76), which was denied on November 5, 2020 (Tr. 1-6). Plaintiff appealed this decision to the United State District Court for the Eastern District of Missouri, the Commissioner moved to remand, and the Court remanded the case to the agency. (Tr. 664-69.)

On April 9, 2024, the ALJ held a hearing on remand, at which Plaintiff testified as follows: since the 2020 hearing, the pain in her lower back had worsened; she took three different medications for her headaches and was still trying to get them under control, reporting headaches twelve to fifteen days a month; her headaches caused light and sound sensitivity; she was receiving monthly nerve block shots in her head, which dulled her symptoms for four-to-five weeks; she could not do housework or normal chores; she had difficulty going up the four steps to enter her house; she struggled with concentration; she spent about fifteen hours a day lying down and could not sit or stand for more than fifteen to twenty minutes at a time; she had trouble sleeping due to pain; her hands cramped and locked up, but she had not received any treatment on her hands since her 2015 carpal tunnel surgery; she took Percocet and a muscle relaxer for pain management; and she has experienced difficulty getting treatment due to the Covid pandemic, a loss of health insurance coverage, and lack of transportation. (Tr. 599-614.)

2

The ALJ issued an unfavorable decision on June 5, 2024. (Tr. 570-84.) Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner. The Court accepts the facts as set forth in the parties' respective statements of fact and responses.

## II.     STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step

3

Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an

4

adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Moore*, 572 F.3d at 523; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III.  THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found as follows: Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 31, 2015; Plaintiff had the severe impairments of lumbar degenerative disc disease, cervical arthropathy, osteoarthritis, history of occipital neuralgia and pseudotumor cerebri, migraines, and obesity; and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 576-78.) The ALJ found that Plaintiff had the following RFC:

> [Plaintiff can p]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that [Plaintiff] can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally stoop, crouch, and crawl. She can frequently reach with the bilateral upper extremities. [Plaintiff] must avoid exposure to concentrated fumes, odors, gases, dust, or poor ventilation. She must avoid extreme heat or cold, vibrations, and loud noise environments defined as noise intensity levels 4 and greater per SCO. Finally, [Plaintiff] must avoid hazards such as unprotected heights and dangerous machinery.

(Tr. 578). At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work (Tr. 582); and at Step Five, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform (Tr. 583-84).

5

## IV. DISCUSSION

Plaintiff challenges the ALJ's decision on the following two grounds: (1) the ALJ failed to properly evaluate medical opinion evidence, and (2) the RFC is not supported by substantial evidence. (ECF No. 29.)

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted); *see Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *See Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*,

465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. ALJ's Evaluation of Medical Opinion Evidence

Plaintiff challenges the ALJ's evaluation of the opinions of State agency medical consultant Judee Bland, M.D., and Plaintiff's treating physician, Mafaza Khan, M.D. (ECF No. 29 at 2-12.)

The ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under this regulation, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors, including supportability, consistency, the medical source's relationship with the claimant, their specialization, their understanding of the Social Security Administration's disability policies, and their familiarity with other evidence in the claim. 20 C.F.R. § 404.1520c(c). "The first two factors—supportability and consistency—are the most important." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)). In considering supportability, the ALJ is to look to the relevancy of the objective medical evidence and supporting explanations used to support the medical opinion or finding at issue. *See* 20 C.F.R. § 404.1520c(c)(1). To consider consistency, the ALJ is to compare the medical opinion or finding at issue with the evidence from other medical sources and nonmedical sources in the claim. *See* 20 C.F.R. § 404.1520c(c)(2). ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b).

7

*i.   Dr. Bland's Medical Opinion*

Plaintiff challenges the ALJ's evaluation of Dr. Bland's medical opinion, arguing that the ALJ failed to adequately evaluate supportability and consistency in finding Dr. Bland's opinion generally persuasive. (ECF No. 29 at 2-11.) Plaintiff argues that Dr. Bland and the ALJ failed to support their findings with objective evidence. (*Id.* at 3-5, 11.) Plaintiff further contends that Dr. Bland referenced numerous exam findings that undermined Plaintiff's ability to perform light work, but the ALJ failed to discuss these findings in reviewing Dr. Bland's opinion. (*Id.*)

In determining that Dr. Bland's findings were generally persuasive, the ALJ cited several exhibits from the record and noted that Dr. Bland opined that Plaintiff was able to perform work activities at the light exertional level, with some postural and environmental limitations. (*Id.* at 581-82.) The ALJ explained that Dr. Bland cited examinations in which Plaintiff's heel-toe walk was performed well, she was able to perform anterior spine flexion reaching her kneecaps, and her gait was often normal. (*Id.* at 582.) The ALJ continued that these finders were consistent with the evidence showing Plaintiff's relief of pain symptoms with treatment. (*Id.*) Finally, the ALJ found the record supported some manipulative limitations with Plaintiff's right upper extremity as a result of her cervical degenerative disease and osteoarthritis in the shoulder, even though Dr. Bland did not set forth such limitations in her findings. (*Id.*)

This Court finds that the ALJ's decision sufficiently addressed the consistency and supportability factors. The ALJ adequately articulated consistency in discussing how Dr. Bland's findings, and the medical records on which she relied, were consistent with evidence in the record demonstrating Plaintiff experienced pain relief with treatment.[2] *See* 20 C.F.R. § 404.1520c(c)(2).

---

[2] Plaintiff challenges the ALJ's finding that Dr. Bland's opinion was consistent with evidence showing improvement from treatments, contending that the ALJ improperly equated Plaintiff's temporary symptom control from medication and injections to meaningful symptom

8

Similarly, the ALJ's discussion that Dr. Bland relied on certain examinations findings from the medical record and that these findings were consistent with evidence showing Plaintiff's relief of pain symptoms with treatment, sufficiently articulated supportability as to Dr. Bland's opinion. *See* 20 C.F.R. § 404.1520c(c)(1); *see also Gary D. v. King*, No. 24-CV-961, 2025 WL 554026, at *4 (D. Minn. Feb. 3, 2025) (finding sufficient supportability discussion where ALJ discussed state agency doctor's opinions in relation to medical record; noting that consistency and supportability analyses can somewhat overlap); *Pa M. v. Kijakazi*, No. 20-741, 2021 WL 3726477, at *9 (D. Minn. Aug. 23, 2021) (finding ALJ's supportability discussion sufficient where ALJ explained that state agency medical consultants' opinions were supported by record medical evidence); *see also Rudloff v. O'Malley*, No. 4:23-CV-416, 2024 WL 1140930, at *9 (E.D. Mo. March 15, 2024) ("The ALJ is not required to use the word 'supportability' when considering persuasiveness.") (internal citations and omitted).

To the extent that Plaintiff argues that the ALJ failed to consider evidence supporting a different conclusion, the regulations do not require the ALJ to address each part of Bland's opinion. *See Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) ("[T]he ALJ is free to accept some, but not all, of a medical opinion …. [a]nd the ALJ is not required to explicitly ... reconcile every conflicting shred of medical evidence."); *McClure v. Saul*, No. 1:20-CV-150, 2021 WL 3856577, at *7 (E.D. Mo. Aug. 30, 2021) ("[20 C.F.R. § 404.1520c] does not require an ALJ to address each and every part of a medical opinion to show that the entire opinion was properly considered.").

---

resolution or the ability to work full time. (ECF No. 29 at 5-11.) This argument fails to successfully challenge the ALJ's persuasiveness analysis of Dr. Bland's opinion, because, for reasons stated later in this opinion, the ALJ's finding of symptom improvement from treatment is supported by substantial evidence in the record. *See infra* page 15.

9

Plaintiff's remaining arguments essentially advocate for a reweighing of the evidence, which this Court declines to do. *See Renstrom*, 680 F.3d at 1064.

Moreover, the ALJ included manipulative limitations with Plaintiff's right upper extremity, because even though Dr. Bland did not opine such limitations, the ALJ found they were necessary considering medical evidence of Plaintiff's cervical degenerative disease and osteoarthritis in the shoulder. *See Laramie v. Kijakazi*, No. 4:22-CV-107, 2023 WL 2610215, at *5 (E.D. Mo. Mar. 23, 2023) (finding error harmless where ALJ found greater RFC limitation than described in medical opinion); *see also Travis P. v. Kijakazi*, No. CV 22-02245, 2023 WL 7017829, at *3 (D. Minn. Oct. 25, 2023) (finding an ALJ properly considered state agency consultants' opinions because the ALJ "explain[ed] that some of the limitations in those opinions were supported by and consistent with the record as a whole, while some limitations—namely, certain adaptive limitations—were not."). For all these reasons, this Court finds that the ALJ's decision sufficiently addressed consistency and supportability, and Plaintiff's arguments to the contrary are unavailing.

### ii. Dr. Khan's Medical Opinion

Plaintiff next challenges the ALJ's persuasiveness findings as to Dr. Khan's medical opinions, namely the ALJ's consistency and supportability analyses, arguing that the ALJ failed to explain how the medical evidence and Plaintiff's activities of daily life were inconsistent with Dr. Khan's opinion or demonstrated the ability to work full time. (ECF No. 29 at 11-12.) She further contends that the ALJ's persuasiveness discussion merely addressed the parts of the record that supported the ALJ's conclusion. (*Id.*)

In January 2022, Plaintiff's treating source, Dr. Khan, opined that Plaintiff could lift and carry less than ten pounds, could sit less than twenty minutes at one time, and would miss work at least three times a month or more due to her impairments. (Tr. 581, 944-46.) The ALJ found that

10

Dr. Khan's opinions were not persuasive, as they were not consistent with or supported by the objective medical evidence. (Tr. 581.) Specifically, the ALJ explained that Dr. Khan "offered little to support the limitations identified." (*Id.*) Further, the ALJ explained that contrary to Dr. Khan's opinion, Plaintiff "is independent with her daily living activities and often appeared with a normal gait and stance and exhibited full range of motion in the lumbar spine," citing treatment notes discussed earlier in the ALJ's decision. (*Id.*) The ALJ also noted that Plaintiff had "received benefits from steroidal injections in various joints" and her "migraines were better controlled on [the] prescription Pamelor." (*Id.*)

This discussion, in combination with the ALJ's earlier discussion of the medical records and reports on Plaintiff's activities of daily life (Tr. 577-81), satisfies the requirement for the ALJ to articulate the supportability and consistency factors in finding Dr. Khan's opinions not persuasive. *See* 20 C.F.R. § 404.1520c(b); *Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009) (the basis of the ALJ's finding may be "apparent from the opinion's entirety"); *see also Gary D.*, 2025 WL 554026, at *4 (consistency and supportability analyses can somewhat overlap).

Regarding the ALJ's discussion of the supportability factor, as Plaintiff acknowledges, the ALJ explained that Dr. Khan offered little support for his opinion, which was contrary to medical evidence in the record. *See* 20 C.F.R. § 404.1520c(c)(1); *see also Plowman v. O'Malley*, No. 1:23-cv-01201-HBK, 2024 WL 4347436, at *5 (E.D. Cal. Sep. 30, 2024) (finding ALJ adequately articulated supportability factor by stating that provider provided "little support for the physical limitations," and noted medical evidence contrary to the provider's opinion); *Wroblesky v. Comm'r of Soc. Sec.*, No. 1:23-cv-232-JEG, 2023 WL 7131807, at *10 (N.D. Ohio Oct. 30, 2023) (determining that ALJ discussed supportability of provider's opinion by "reviewing [the provider's] own examination findings," which showed "little support ... for the opined

11

limitations"); *Jonathan C. v. Comm'r of Soc. Sec.*, No. 3:21-cv-00183-RGV, 2023 WL 12148414, at *12 (N.D. Ga. Mar. 30, 2023) (finding ALJ satisfied supportability articulation requirement by finding opinion described limitations that were not reflected in records) (citing *Simmons v. Kijakazi*, No. 20-00508-B, 2022 U.S. Dist. LEXIS 166722 at *14 (S.D. Ala. Sept. 15, 2022) (finding the ALJ satisfied the supportability factor where the "ALJ correctly recognized that [the medical provider] provided little support for his conclusions")).

As to consistency, the ALJ explained that Dr. Khan's opinions were contrary to Plaintiff's independence with daily activities, which included Plaintiff's reports that she could tend to her personal care needs, including preparing meals, household chores, walking, and shopping in stores (Tr. 580-81). *See Toni M. v. Kijakazi*, No. 6:22-CV-02007-LRR, 2022 WL 17177310, at *5 (N.D. Iowa Nov. 23, 2022) ("In considering the consistency of a medical opinion with the record as a whole, an ALJ may consider a claimant's daily activities.") (citing *Goff*, 421 F.3d at 789). The ALJ also contrasted Dr. Khan's opinion with treatment notes indicating that Plaintiff often appeared with a normal gait and stance and exhibited full range of motion in the lumbar spine, and medical records showing pain relief with injections and medication (Tr. 302, 400, 580-81, 1240, 1245, 1251, 1263, 1281). *See* 20 C.F.R. § 404.1520c(c)(2) (under consistency factor, ALJ is to compare opinion at issue with evidence from other medical and nonmedical sources in claim). The ALJ's discussion of Dr. Kahn's opinions as compared to other medical and nonmedical evidence in the record satisfies the articulation requirement as to consistency, and nothing more was required. *See Collins v. Kijakazi*, No. 6:20-CV-03237-MDH, 2021 WL 3909670, at *3 (W.D. Mo. Aug. 31, 2021) (ALJ properly considered consistency of medical provider's opinion by comparing the provider's opinions to medical records, treatment history, and actitities of daily life). For all these reasons, this Court finds that the ALJ's decision sufficiently addressed the consistency and

12

supportability of Dr. Khan's opinions, and Plaintiff's arguments to the contrary, largely advocating for the reweighing of evidence, are unavailing. *See Renstrom*, 680 F.3d at 1064.

### C.  RFC Determination

Finally, Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ improperly relied on Dr. Bland's medical opinion, even though it was a five-year old opinion from a non-examining state agency medical consultant; drew inferences from the medical reports by failing to discuss how the objective evidence provided for the RFC findings; and added certain limitations, including frequent reaching with the upper extremities and occasional climbing of ramps and stairs, without explanation or reference to supporting evidence. (ECF No. 29 at 12-14.) For the following reasons, this Court finds the ALJ's RFC determination is supported by substantial evidence.

An RFC is the most a claimant can still do, despite the claimant's physical and mental limitations. 20 C.F.R. § 416.945(a)(1). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); 20 C.F.R. § 416.945(a)(1). "Ultimately, the RFC determination is a 'medical question' that 'must be supported by some medical evidence of [the plaintiff's] ability to function in the workplace.'" *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017)). "Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional." *Williams v. Saul*, No. 2:19-CV-88 RLW, 2021 WL 1222770, at *10 (E.D. Mo. Mar. 31, 2021) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). However, the "interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citation omitted).

13

Nonetheless, it is the claimant's burden of proof to establish the RFC. *See Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019); 20 C.F.R. § 404.1512(a). While an ALJ is not permitted to draw his/her own inferences about a claimant's functional ability from medical reports, *Combs*, 878 F.3d at 646, there is no requirement that an RFC finding be supported by a specific medical opinion, *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022). Finally, "[w]here the medical evidence is equally balanced ... the ALJ resolves the conflict." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir.1995).

Initially, this Court rejects Plaintiff's argument that the ALJ erred in relying on Dr. Bland's opinion. The ALJ acknowledged that Dr. Bland's opinion was issued in 2019; and in determining the RFC, the ALJ relied on non-medical and medical evidence from the record developed more recently. In fact, in evaluating the persuasiveness of Dr. Bland's opinions, the ALJ compared the opinions with treatment records showing relief of pain symptoms, that were not available to Dr. Bland when she issued her opinions. Moreover, Plaintiff does not identify any evidence developed after Dr. Bland's 2019 opinion that the ALJ failed to consider. Overall, the ALJ's findings were based on all relevant evidence in the record, including Dr. Bland's opinion (Tr. 578-82). *See Jones v. Kijakazi*, No. 1:23-CV-00016-SNLJ, 2024 WL 3509498, at *4 (E.D. Mo. July 23, 2024) (ALJ may rely in part on opinions rendered early in the relevant period as the RFC must be based on all relevant evidence in the record); *Walker v. Kijakazi*, No. 6:21-CV-3235-NKL, 2022 WL 3036639, at *6 (W.D. Mo. Aug. 1, 2022) ("[A]n ALJ can rely on the opinion of a state agency medical consultant who did not have access to all the records, so long as the ALJ conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered.").

14

Next, this Court disagrees that the ALJ improperly drew inferences or that the RFC is otherwise unsupported. The RFC determination here was supported by substantial evidence because after conducting a detailed review of Plaintiff's medical records, the ALJ based the RFC determination on the entire record, including imaging results, examination records, treatment history, and Plaintiff's activities of daily life (Tr. 578-82), all of which speak directly to Plaintiff's ability to function in the workplace. *See Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (substantial evidence, including examination findings and Plaintiff's daily activities, supported RFC determination); *Hurst v. Kijakazi*, No. 4:20-CV-00080-MTS, 2021 WL 3021424, at *7 (E.D. Mo. July 16, 2021) ("[O]bjective medical findings and evidence can constitute sufficient medical support for an RFC assessment even in the absence of medical opinion evidence.").

Plaintiff specifically challenges the ALJ's findings that treatment and medication helped control Plaintiff's pain symptoms. This challenge is unpersuasive here because the ALJ's finding is substantially supported by evidence in the record, including for example, 2022 medical records noting 80% improvement of low back pain after receiving injections and Plaintiff's 2023 report that the prescription Pamelor had greatly improved her symptoms and she was feeling much better overall (Tr. 581, 1024). *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ may consider treatment including medication and other modalities used to obtain symptoms relief). Indeed, the ALJ aptly summarized her findings in light of the entire record, noting that, "[w]hen reviewed in tandem, the contemporaneous medical evidence shows rudimentary and effective treatment and, while she exhibits some ongoing functional limitations, the claimant can perform certain tasks with appropriate treatment and medical management." *See generally Pierce v. Kijakazi*, No. 4:20 CV 1426 CDP, 2022 WL 888141, at *4 (E.D. Mo. Mar. 25, 2022) (Rather than "picking and choosing"

15

from the evidence, the ALJ properly considered the evidence claimant describes and weighed it against claimant's activities of daily life and other medical evidence).

As such, the ALJ did not draw her own inferences about Plaintiff's functional ability from the medical reports but instead supported the RFC determination with medical and non-medical evidence from the entire record. *See Schmitt*, 27 F.4th at 1360 (RFC determination is based on all relevant evidence, including the medical records, observations of treating physicians and others, and claimant's subjective complaints); *Noerper*, 964 F.3d at 744 (RFC must be supported by some medical evidence of claimant's ability to function in the workplace; clarifying that ALJ is not required in all instances to "obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality").

For all these reasons, the ALJ's RFC determination is supported by substantial evidence. *See Biestek*, 139 S. Ct. at 1154. The Court also notes that even if the evidence pointed to an alternative outcome, Plaintiff fails to show that the ALJ's decision is outside the available zone of choice. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("As there is conflicting evidence on the record, the ALJ's determination . . . does not lie outside the available zone of choice."); *see also Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (even if substantial evidence in record could have supported contrary outcome, this court must affirm ALJ's decision if there is also substantial evidence to support it).

VI.   CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence.

Accordingly,

16

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Frank Bisignano shall be substituted for Leland Dudek as the Defendant in this suit pursuant to Fed. R. Civ. P. 25(d).

_____<br>
JOSEPH S. DUEKER<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of February 2026.